# SPURR v. UNITED STATES.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SIXTH CIRCUIT.

No. 448. Argued March 13, 14, 1899. — Decided May 22, 1899.

Spurr was tried in the Circuit Court of the United States for the Middle District of Tennessee on three indictments, consolidated together, each of which charged him with having wilfully violated the provisions of Rev. Stat. § 5208, by wilfully, unlawfully and knowingly certifying certain cheques drawn on said bank by Dobbins and Dazey, well knowing that Dobbins and Dazey did not have on deposit with the bank at the times when the cheques were certified, respectively, an amount of money equal to the respective amounts specified therein. It was not denied that the defendant certified the cheques, and that the account of Dobbins and Dazey was overdrawn when the certifications took place. The questions for determination were defendant's knowledge of the state of Dobbins and Dazey's account when the cheques were certified and his intent in the certifications. After the case had been committed to the jury, and they had had it under consideration for some hours, they returned to the court room, and asked the following question, which was written out: " We want the law as to the certification of cheques, when no money appeared to the credit of the drawer." The court read to the jury the first half of Rev. Stat. § 5208, as follows : " It shall be unlawful for any officer, clerk or agent of any national banking association to certify any cheque drawn upon the association unless the person or company drawing the cheque has on deposit with the association, at the time such cheque is certified, an amount of money equal to the amount specified in such cheque." The court then inquired : " Does this answer your question? " To which the foreman replied : " Yes, sir." The court again read that part of the section, and made certain observations; among others that a false certification was " the certifying by an officer of the bank that a cheque is good when there are no funds to meet it." As the jury were retiring, counsel for defendant said to the court that he thought what the jury wanted was the act of 1882 which the court had read to them, and that the court ought to read and explain that act to the jury. That act provided that an officer, clerk or agent of a national bank wilfully violating the provisions of Rev. Stat. § 5208, etc., " should be deemed guilty of a misdemeanor, and should, on conviction," " be fined," etc. The court, after asking if the counsel referred to the act prescribing a penalty for false certification, and receiving an answer in the affirmative, said that the jury had nothing to do with that. Held, that the Circuit Court clearly erred in declining the request of counsel in respect of the act of 1882.

SPURR was tried in the Circuit Court of the United States for the Middle District of Tennessee on three indictments, each containing several counts, for the violation of section 5208 of the Revised Statutes, which provides:

"It shall be unlawful for any officer, clerk or agent of any national banking association to certify any cheque drawn upon the association unless the person or company drawing the cheque has on deposit with the association, at the time such cheque is certified, an amount of money equal to the amount specified in such cheque. Any cheque so certified by duly authorized officers shall be a good and valid obligation against the association; but the act of any officer, clerk or agent of any association, in violation of this section, shall subject such bank to the liabilities and proceedings on the part of the Comptroller as provided for in section fifty-two hundred and thirty-four."

By section 13 of the act of Congress approved July 12, 1882, c. 290, 22 Stat. 162, it is provided:

"That any officer, clerk or agent of any national banking association who shall wilfully violate the provisions of an act entitled 'An act in reference to certifying cheques by national banks,' approved March third, eighteen hundred and sixty-nine, being section fifty-two hundred and eight of the Revised Statutes of the United States, or who shall resort to any device, or receive any fictitious obligation, direct or collateral, in order to evade the provisions thereof, or who shall certify cheques before the amount thereof shall have been regularly entered to the credit of the dealer upon the books of the banking association, shall be deemed guilty of a misdemeanor, and shall, on conviction thereof in any Circuit or District Court of the United States, be fined not more than five thousand dollars, or shall be imprisoned not more than five years, or both, in the discretion of the court."

The indictments charged that Spurr, being the president of the Commercial National Bank of Nashville, Tennessee, wilfully violated the provisions of section 5208 of the Revised Statutes by wilfully, unlawfully and knowingly certifying certain cheques drawn on said bank by Dobbins and Dazey, well

knowing that Dobbins and Dazey did not have on deposit with the bank at the times when the cheques were certified, respectively, an amount of money equal to the respective amounts specified therein.   They were consolidated and tried together, and a verdict of guilty returned as follows : "Came the United States attorney, and also the defendant in proper person, and came also the jury heretofore impanelled, and upon their oaths do say that they find the defendant guilty as charged in the indictment and recommend him to the mercy of the court."

Motions for new trial and in arrest of judgment were made and overruled, and judgment entered on the verdict in these words :

" And thereupon, the United States, by its District Attorney, moved the court for sentence upon the verdict of the jury heretofore rendered, upon count No. 2 of indictment No. 7994, count No. 2 of indictment No. 8139, counts Nos. 1 and 4 of indictment No. 7994, count No. 3 of indictment No. 8139, count No. 2 of indictment 8078 and count No. 5 of indictment No. 8139.   The defendant was thereupon called upon by the court to stand and was asked by the court if he had anything further to say why the sentence of the law should not be pronounced against him, and he replied that he had nothing further to say than he had already said ; and the court, being cognizant of the facts attending said verdict and of the manner in which the issues found by said verdict were submitted to the jury, finds and so orders and adjudges that said verdict is applicable to indictment No. 7994, counts 1 and 4, and indictment No. 8139, count 3, all of which are based upon a cheque certified by the defendant, dated January 3, 1893, and upon said verdict upon said counts of said indictments, the court orders and adjudges that the defendant be confined to the penitentiary of the State of New York, at Albany, New York, for two years and six months from this date." ·

The several counts of the consolidated indictments charged the certification by defendant of four cheques drawn by Dobbins and Dazey between December 9, 1892, and February 13, 1893, both inclusive, on the Commercial National Bank, aggregating $95,641.95.   The bank was organized in 1884, and

defendant was its president and one Porterfield its cashier from its organization to its failure, March 25, 1893. Dobbins and Dazey were engaged in the purchase, sale and exportation of cotton, and their financial standing and credit were excellent. When the four cheques in question were certified by defendant the accounts of Dobbins and Dazey were overdrawn, and the evidence was that their account was continuously and largely overdrawn during the period covered by these cheques, except on one day, and that "this fact was known to Porterfield, the cashier, and all the employés of the bank under him in authority." But "there was also evidence tending to show that Porterfield misrepresented the real state of the Dobbins and Dazey account to the defendant and the committees and the directors of the bank, by statements made to them, and also in his sworn reports to the Comptroller of the Currency, wherein the overdrafts in the bank were very largely understated." There was also evidence on behalf of defendant to the effect "that he had no knowledge of the fact that the account of Dobbins and Dazey was overdrawn on the books of the bank at the time of the certification of any of the cheques upon which he is indicted, nor at any time during the period covered by the dates of the cheques;" that when he certified these cheques he inquired in every instance either of the cashier, or of the exchange clerk, and in every instance received information that sufficient funds and credits of Dobbins and Dazey were then in the bank to cover the cheques certified, and that he never at any time certified a cheque without receiving such information, and that he relied upon it as true; that if the cashier was in, he inquired of him; if not, he inquired of the exchange clerk; these being the appropriate sources of information. The evidence on this head is given in much detail in the bill of exceptions.

The bill of exceptions also stated —

"After the jury were charged and had retired from the court room to consider their verdict, and had been deliberating for some hours, they returned to the court room and asked the following question, which was written out in pencil and handed to the court:

" ' We want the law as to the certification of cheques when no money appeared to the credit of the drawer.'

"The court then said : 'The jury state that they want the law as to the certification of a cheque where there is no money to the credit of the drawer.

" ' I cannot better answer this question which the jury has put to the court, than by reading the section of the Revised Statutes which relates to that subject.'

" (Reads from sec. 5208, Rev. Stat. :) ' It shall be unlawful for any officer, clerk or agent of any national banking association to certify any cheque drawn upon the association unless the person or company drawing the cheque has on deposit with the association, at the time such cheque is certified, an amount of money equal to the amount specified in such cheque.'

" ' Does this answer your question ? '

" FOREMAN OF THE JURY : ' Yes, sir.'

" THE COURT : ' I read it again so that you may all understand it.' (The court read again that part of section 5208, Rev. Stat., quoted above, and added :)

" ' Is that all, gentlemen? The $30,000 was the credit allowed, and these overdrafts, as the court understands from the testimony in the case, were in excess of that. The account of Dobbins and Dazey — the overdrafts — were in excess of the amount which Dobbins and Dazey had as a limit of line of credit.

" ' I charge you in addition to the instructions I gave you this morning, that a cheque drawn upon a bank, where the drawer has no funds, creates no obligation against the bank, and it does not create any obligation until it is certified as good by an officer of the bank, and that makes the cheque good as to the holder of it, and the bank then becomes estopped, although there was no warrant for the drawing of the cheque, as against the *bona fide* holder. So that the obligation of the bank to meet it in such case is made so by the act of the officer who certifies it to be good. That is what is meant by false certification. It is the certifying by an officer of a bank that a cheque is good when there are no funds there to meet it.

"'You understand what I have said now is to be taken in connection with what I have before instructed you.'

"As the jury were retiring, counsel for defendant said to the court that he thought what the jury wanted was the act of 1882 making it a misdemeanor to wilfully violate the section of the Revised Statutes which the court had read to them, and that the court ought to read and explain that act to the jury; the court asked if counsel referred to the act prescribing the penalty for false certification, and on being answered in the affirmative, stated that the jury had nothing to do with that.

"To this action of the court in reading twice section 5208 of the Revised Statutes and in failing to read and explain the act of 1882, in response to the jury's question, and to the additional instructions given to the jury at this time beginning with the words 'The $30,000' and ending with the words 'to meet it,' the defendant then and there excepted."

Sentence having been pronounced as before stated, the case was taken on error to the Circuit Court of Appeals for the Sixth Circuit, and the judgment was affirmed, 59 U. S. App. 663, whereupon the cause was brought to this court on certiorari.

*Mr. John A. Pitts* and *Mr. Albert H. Horton* for Spurr. *Mr. Bailey P. Waggener* was on their brief.

*Mr. Edward Baxter* for the United States.

Mr. CHIEF JUSTICE FULLER, after stating the case, delivered the opinion of the court.

It was not denied that defendant certified the cheques, and that the account of Dobbins and Dazey was overdrawn when the certifications took place. The questions for determination were defendant's knowledge of the state of Dobbins and Dazey's account when the cheques were certified and his intent in the certifications.

Section 5208 made it unlawful for any officer, clerk or agent

of any national banking association to certify any cheque drawn upon it, unless the drawer of the check had on deposit at the time such cheque was certified an amount of money equal to the amount specified therein, and provided the consequences which should follow on a violation of the section. Then came section 13 of the act of July 12, 1882, which made a wilful violation of section 5208 criminal, and denounced a penalty thereon.

These sections were under consideration in *Potter* v. *United States*, 155 U. S. 438, 445, and the court said:

"The charge is of a wilful violation. That is the language of the statute. Section 5208 of the Revised Statutes makes it unlawful for any officer of a national bank to certify a cheque unless the drawer has on deposit at the time an equal amount of money. But this section carries with it no penalty against the wrongdoing officer. Section 13 of the act of 1882 imposes the penalty, and imposes it upon one ' who shall wilfully violate,' etc., as well as upon one ' who shall resort to any device,' etc., ' to evade the provisions of the act;' ' or who shall certify cheques before the amount thereof shall have been regularly entered to the credit of the dealer upon the books of the banking association.' The word ' wilful' is omitted from the description of offences in the latter part of this section. Its presence in the first cannot be regarded as mere surplusage; it means something. It implies on the part of the officer knowledge and a purpose to do wrong. Something more is required than an act of certification made in excess of the actual deposit, but in ignorance of that fact or without any purpose to evade or disobey the mandates of the law. The significance of the word ' wilful' in criminal statutes has been considered by this court. In *Felton* v. *United States*, 96 U. S. 699, 702, it was said: 'Doing or omitting to do a thing knowingly and wilfully, implies not only a knowledge of the thing, but a determination with a bad intent to do it or to omit doing it. The word ' wilfully,'' says Chief Justice Shaw, 'in the ordinary sense in which it is used in statutes, means not merely ' voluntarily,' but with a bad purpose.' 20 Pick. (Mass.) 220. ' It is frequently un-

derstood,' says Bishop, ' as signifying an evil intent without justifiable excuse.' Crim. Law, vol. 1, § 428.

"And later, in the case of *Evans* v. *United States,* 153 U. S. 584, 594, there was this reference to the words 'wilfully misapplied': 'In fact, the gravamen of the offence consists in the evil design with which the misapplication is made, and a count which should omit the words 'wilfully,' etc., and 'with intent to defraud,' would be clearly bad.' . . .

"While it is true that care must be taken not to weaken the wholesome provisions of the statutes designed to protect depositors and stockholders against the wrongdoings of banking officials, it is of equal importance that they should not be so construed as to make transactions of such officials, carried on with the utmost honesty and in a sincere belief that no wrong was being done, criminal offences, and subjecting them to the severe punishments which may be imposed under those statutes."

The wrongful intent is the essence of the crime. If an officer certifies a cheque with the intent that the drawer shall obtain so much money out of the bank when he has none there, such officer not only certifies unlawfully, but the specific intent to violate the statute may be imputed. And so evil design may be presumed if the officer purposely keeps himself in ignorance of whether the drawer has money in the bank or not, or is grossly indifferent to his duty in respect to the ascertainment of that fact.

The defence was that defendant had no actual knowledge that Dobbins and Dazey had not sufficient funds in the bank to meet the cheques, nor knowledge of facts putting him on inquiry; that, on the contrary, he believed that they had such funds; that this belief was founded on information he received from the cashier or the exchange clerk, the proper sources of information, in response to inquiries which he made in each instance before he certified; that he honestly relied on that information, and that he had the right to do so. Defendant was entitled to the full benefit of this defence, and in order to that, it was vital that the meaning of "wilful violation," as used in section 13 of the act of 1882, should be clearly explained to the jury.

It appears from this record that after the case had been committed to the jury, and they had had it under consideration for some hours, they returned to the court room, and asked the following question, which was written out : " We want the law as to the certification of cheques when no money appeared to the credit of the drawer." The court then read to the jury the first part of section 5208 of the Revised Statutes, and inquired : " Does this answer your question ? " To which the foreman replied : " Yes, sir." The court again read. that part of the section, and made certain observations, among other things, that a false certification " is the certifying by an officer of a bank that a cheque is good when there are no funds to meet it."

The record shows that then " as the jury were retiring, counsel for the defendant said to the court that he thought what the jury wanted was the act of 1882 making it a misdemeanor to wilfully violate the section of the Revised Statutes which the court had read to them, and that the court ought to read and explain that act to the jury; the court asked if counsel referred to the act prescribing the penalty for false certification, and on being answered in the affirmative, stated that the jury had nothing to do with that." Exception was taken to the reading twice of the part of section 5208, and the failure to read and explain the act of 1882, and to the additional instructions given by the court.

We think that the learned Circuit Judge clearly erred in declining the request of counsel in respect of section 13.

It is true that it was not part of the function of the jury to fix the penalty, and the remark of the court, " that the jury had nothing to do with that," undoubtedly referred to the penalty only, though, as the matter appears in the record, the jury may well enough have understood it differently. But it was the act of 1882 that made the certification of cheques, if in " wilful violation " of section 5208, a criminal offence, and the word " wilful " " implies on the part of the officer knowledge and a purpose to do wrong," and plainly it was in relation to the point of " wilful violation " that counsel wished the court to read and expound that section. It seems to us that it

was the duty of the court to do so, if the question put by the jury was answered at all, since "the law as to the certification of cheques when no money appeared to the credit of the drawer" involves civil consequences under section 5208, and criminal consequences under section 13, unless it is to be held that every certification where funds are lacking constitutes a wilful violation of section 5208. We cannot accept the view that because when the court asked the jury whether the first part of section 5208 answered their question, the foreman replied in the affirmative, therefore there was no error in the failure to call their attention to section 13. If the court was satisfied that the law applicable to the case was embodied in the first part of section 5208, the jury were bound to be satisfied also; but we are of opinion that that was an insufficient definition, and was therefore erroneous. However the court went further, and said:

"I charge you, in addition to the instructions I gave you this morning, that a cheque drawn upon a bank, where the drawer has no funds, creates no obligation until it is certified as good by an officer of the bank, and that makes the cheque good as to the holder of it, and the bank then becomes estopped, although there was no warrant for the drawing of the cheque, as against the *bona fide* holder. So that, the obligation of the bank to meet it in such case is made so by the act of the officer who certified it to be good. That is what is meant by false certification. It is the certifying by an officer of a bank that a cheque is good when there are no funds there to meet it.

"You understand what I have said now is to be taken in connection with what I have before instructed you."

We fear that these instructions, following in direct connection with what had passed in reference to section 5208, may have led the jury to understand the law of the case to be that the false certification thus defined constituted a criminal offence under the statute, and that that impression was not rendered harmless by the admonition that what was then said was to be taken with what had been said before.

At all events, we think it would be going too far to hold

that that caution operated to obviate the error in failing to explain section 13 at this particular juncture. The jury had been considering their verdict for several hours, and had then in effect requested a more complete definition of the offence. This the court assumed to give, but it was incomplete, and what was omitted cannot properly be held to have been supplied, under the circumstances, by the reference to prior instructions. The court had indeed, in the original charge, used the words " wilfully " and " wilful" in the following instructions :

" If you find from the proof that the account of Dobbins and Dazey, upon the books of the bank, was overdrawn continuously during the period covered by the dates of the cheques certified by the defendant and that the defendant was in fact ignorant of such overdraft; and that he certified the several cheques mentioned in the indictment believing at the time that the exchange deposited by Dobbins and Dazey on the days upon which said cheques were certified, was sufficient or more than sufficient to cover the amount of said cheques, besides the overdraft already existing, then he is not guilty and you should acquit him, unless such ignorance of the overdraft was wilful as elsewhere explained in the court's instructions. In this connection, you will bear in mind what I have previously charged you, that if this was a general and not a special account of Dobbins and Dazey, that the exchange which came in was applicable in the first place to the liquidation of the previously existing overdraft before there could be said to be any funds to the account of Dobbins and Dazey to respond to the cheques."

" If the proof fails to satisfy your minds clearly and beyond a reasonable doubt, that the defendant did actually know, at the time he certified the cheques mentioned in the indictment that Dobbins and Dazey did not have on deposit in the bank sufficient funds and credits to meet the cheques so certified, then you should acquit him, unless you are convinced by the proof beyond a reasonable doubt that he wilfully, designedly and in bad faith — these words mean substantially the same thing — shut his eyes to the fact and purposely refrained

from inquiry or investigation for the purpose of avoiding knowledge."

The court had also said that "in general, if the defendant acted in good faith in making these certifications, believing that the state of the account of Dobbins and Dazey justified it, he is not guilty of the offence charged. Mere negligence or carelessness unaccompanied by bad faith would not render him guilty." And other passages of similar purport might be quoted.

But the jury desired further advice as to what constituted criminal certification, or wilful violation of section 5208, and preferred a request which required a comprehensive answer. The response was in the nature of a separate charge, and we are unable to conclude that the error in declining at that time to call attention to section 13 was cured by the bare reference to the original charge.

Many other errors were assigned and pressed in argument, but, as the particular points may not arise in the same way on another trial, we prefer to refrain from expressing any opinion upon them.

> *The judgment of the Circuit Court of Appeals is reversed; the judgment of the Circuit Court is also reversed, and the cause remanded to that court with a direction to set aside the verdict and grant a new trial.*

Mr. Justice Brown and Mr. Justice McKenna dissented.