### PULLEN et al. v. UNITED STATES.

No. 11837.

Circuit Court of Appeals, Fifth Circuit.

Dec. 15, 1947.

SIBLEY and McCORD, Circuit Judges, dissenting.

James H. Martin and John A. Erhard, both of Dallas, Tex., and W. H. Barnes, of Terrell, Tex., for appellants.

Leo Meltzer, Atty. Dept. of Justice, of Washington, D. C., and Clyde G. Hood, Asst. U.S. Atty., and William Cantrell, Jr., Sp. Asst. to the U.S. Atty., both of Dallas, Tex., for appellee.

En Banc.

Before SIBLEY, HUTCHESON, HOLMES, McCORD, WALLER, and LEE, Circuit Judges.

WALLER, Circuit Judge.

Appellants, W. J. Price, Luther Hunter, and Jack Pullen, were convicted under the third count of an indictment[1] charging that the three defendants, together with two other defendants who were acquitted, while acting under color of law, subjected one R. D. Andrew, an inhabitant and citizen of the State of Texas and of the United States, to the deprivation of certain rights, privileges, and immunities secured and protected to him by the Constitution and laws of the United States.

The statute, Sec. 20 of the Criminal Code, Sec. 52, Title 18, U.S.C.A. under which the third count was purportedly drawn is as follows: "Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects, or causes to be subjected, any inhabitant of any State, Territory, or District to the deprivation of any rights, privileges, or immunities secured or pro-

---

[1] "Third Count

"The grand jury further charges:

"That during the months of January and February, 1946, and at all times herein mentioned, William Frazier was the duly qualified and acting constable of Precinct No. 3, Kaufman County, Texas, under and pursuant to the laws of the State of Texas, creating the office of Constable and prescribing the duties thereof.

"That during said period, W. J. Price, was the duly qualified and acting Sheriff of Rockwall County, Texas, under and pursuant to the laws of the State of Texas creating the office of Sheriff and prescribing the duties thereof.

"That Luther Hunter, during the period herein alleged was employed by said Sheriff, W. J. Price, to act as jailer at the jail of Rockwall County, Texas, and that he, the said Luther Hunter, during said period, performed the duties and exercised the powers of jailer under his employment by the said Sheriff, W. J. Price.

"That the said Jack Pullen, Norris Pierce, William Frazier, Luther Hunter and W. J. Price, acting under color of law, statute, regulation and custom, did subject and cause to be subjected R. D. Andrew, an inhabitant and citizen of the State of Texas and the United States, to the deprivation of certain rights, privileges and immunities secured and protected to the said R. D. Andrew by the Constitution and the laws of the United States of America, to-wit, the right to be secure in his person and to be immune from illegal assault and battery; the right and privilege not to be deprived of liberty without due process of law; the right and privilege not to be denied equal protection of the laws; the right and privilege to be tried upon the charge upon which he had been arrested by due process of law, and, if found guilty, to be sentenced and punished in accordance with the laws of the State of Texas; the right and privilege to be free from arrest to a condition of peonage; the right and privilege not to be held to a condition of peonage; and the right and privilege not to be arrested, transported, held and detained except by due process of law of the State of Texas; and the right and privilege to be immune, while in custody of persons acting under color of the laws and statutes of the State of Texas, from illegal assault and battery by any person exercising the authority of said State, that is to say, on or about the 1st day of February, A. D. 1946, the said R. D. Andrew was taken into custody, arrested, held and detained at the jail at Terrell, Texas, there subjected to assault and battery, was transported from Terrell, Texas to the Rockwall County Jail at Rockwall, Texas, where he was subjected to assault and battery, was beaten, hit and had inflicted upon him physical injury and damage, causing him to suffer pain. That R. D. Andrew was kept and confined in said jail from the 1st day of February, A. D. 1946. until the 6th day of February, A. D. 1946, and that he was on several occasions while so confined in said jail, beaten and subjected to the inflictions of physical abuse, was not taken nor permitted to go before any magistrate either in Kaufman County, Texas, nor in Rockwall County, Texas, in order that he might be admitted to bail, that no complaint or other legal accusation charging him with a violation of any law of the State of Texas was pending against him, until the 4th day of February, A. D. 1946, when a purported complaint was lodged against him, which complaint did not allege an offense against the State of Texas, ostensibly in virtue of which his detention was prolonged until he was released in the custody of a Deputy Sheriff to be taken to the farm of the defendant Jack Pullen, there to perform work and labor for the use and benefit of Jack Pullen.

"That all of the said acts were done by said defendants, and were done under color of the offices of Constable, Precinct No. 3, Kaufman County, Texas, Sheriff and Jailer, Rockwall County, Texas, and under color of the laws and statute of the State of Texas."

tected by the Constitution and laws of the United States, or to different punishments, pains, or penalties, on account of such inhabitant being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined not more than $1,000, or imprisoned not more than one year, or both."

The defendants seasonably moved to dismiss Count 3 of the indictment on the ground, among others, that it charged no offense under the laws of the United States, and, specifically, that it failed to charge an offense under Sec. 52, Title 18 U.S.C.A. The real point of attack was that the indictment failed to allege that the defendants "willfully" subjected, or caused to be subjected, their prisoner to a deprivation of any rights or privileges secured or protected by the Constitution or laws of the United States.

The motion was denied, as was also a motion for a judgment of acquittal made at the conclusion of the Government's case. In denying the latter motion the Court made the following comment to counsel for defendants: "However, the Court will give you the benefit of a full and complete charge on the count 3, which deals with the law of depriving a man of his civil rights, and we will follow the reasoning of the Court in the Screws case, [infra] in submitting that law, that charge." This the Court undertook to do, but whether it succeeded or not will later develop.

We deem it necessary to discuss only that specification of error wherein appellants assert that the indictment was totally defective because of its failure to charge that the alleged deprivation of constitutional rights, as prescribed by Sec. 52, was done willfully. The Government, conceding that it would have been better to have alleged that the offense was committed willfully, contends, nevertheless, that the omission was not a matter of substance but only a matter of form, and that under Sec. 556 of Title 18 U.S.C.A.,[2] and Sec. 391 of Title 28 U.S.C. A.,[3] the errors were harmless and without prejudice. In support of this position it asserts in its brief: "That there was ample evidence of the unlawful intent with which the appellants acted and that the District Judge in his most adequate charge instructed the jury that the statute which proscribed the alleged offense, by reason of the use of the word 'willfully' made intent a material element of the offense and that the jury must find such intent (R. 578) is clear beyond doubt."

The only parts of the Judge's charge that dealt with this phase of the case were:

"In Count Three, set forth in the indictment, if you believe that the defendants, William Frazier, Luther Hunter, W. J. Price, acting as officers of the law, and that they, together with said Jack Pullen, did, under color of the law subject and cause R. D. Andrew to be deprived of his rights and privileges under the law as charged in said indictment, then you may find the defendants guilty in Count Three.

\* \* \* \* \* \*

"Next, the Court calls to your attention the fact that the Statute says 'whoever, under color of any law, statute, ordinance, regulation or custom, *wilfully* subjects or causes to be subjected any individual to the deprivation of any rights, privileges or immunities secured or protected to him by the Constitution and laws of the United States shall be guilty, etc.' Now, the word 'wilfully' must be carefully considered by you. The Statutes provides that the thing done must be done wilfully. In law the use of

---

[2] "No indictment found and presented by a grand jury in any district or other court of the United States shall be deemed insufficient, nor shall the trial, judgment, or other proceeding thereon be affected by reason of any defect or imperfection in matter of form only, which shall not tend to the prejudice of the defendant, \* \* \*."

[3] "All United States courts shall have power to grant new trials, in cases where there has been a trial by jury, for reasons for which new trials have usually been granted in the courts of law. On the hearing of any appeal, certiorari, writ of error, or motion for a new trial, in any case, civil or criminal, the court shall give judgment after an examination of the entire record before the court, without regard to technical errors, defects, or exceptions which do not affect the substantial rights of the parties."

the words 'Willful' and 'wilfully' implies a conscious purpose to do wrong. Doing a thing knowingly and wilfully implies not only a knowledge of the thing done, but determination to do it with bad intent or with an evil purpose or motive.

"The use of the word 'wilfully' in the Statute makes intent a material element of the offense charged in this count."

It will be noted that in the first paragraph of the quoted charge there was no reference to the necessity of finding that the defendants acted willfully in the deprivation of constitutional rights and privileges, nor does any other part of the charge correct the omission or make clear that the willfulness must be in the deprivation of constitutional guaranties.

■ So we are forced to the conclusion by the opinion in the case of Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495, 162 A.L.R. 1330, that the charge of the District Judge was not a "most adequate charge" in this case. True it is that he told the jury that they must carefully consider the word "wilfully" and that the statute provides that the "thing done must be done wilfully", and that in law the word "willful" implies a conscious purpose to do wrong and a knowledge of the thing done as well as a determination to do it with evil purpose or with bad intent. But when he speaks of "the thing done", he does not say to the jury that by the use of the term "the thing done" he had reference to the deprivation of constitutional rights, or that he had reference to the wrongful beatings, or the wrongful inflictions of physical abuse. The opinion in the Screws case made it quite clear that the word "willful" implies not merely "a conscious purpose to do wrong" on the part of an officer in beating and otherwise mistreating an inhabitant while acting under color of law, but that there must be a specific intent to deprive him of a federal right, for it said in that case:

"We repeat that the presence of a bad purpose or evil intent alone may not be sufficient. We do say that a requirement of a specific intent to deprive a person of a federal right made definite by decision or other rule of law saves the Act from any charge of unconstitutionality on the grounds of vagueness.

\* \* \* \* \* \*

"For the specific intent required by the Act is an intent to deprive a person of a right \* \* \*.

\* \* \* \* \* \*

"When they act willfully in the sense in which we use the word, they act in open defiance or in reckless disregard of a constitutional requirement which has been made specific and definite.

\* \* \* \* \* \*

"But in view of our construction of the word 'wilfully' the jury should have been further instructed that it was not sufficient that petitioners had a generally bad purpose. To *convict it was necessary for them to find that petitioners had the purpose to deprive the prisoner of a constitutional right, e. g. the right to be tried by a court rather than by ordeal.* And in determining whether that requisite bad purpose was present the jury would be entitled to consider all the attendant circumstances—the malice of petitioners, the weapons used in the assault, its character and duration, the provocation, if any, and the like." 325 U.S. at pages 103, 104, 105, 107, 65 S.Ct. at page 1036, 89 L.Ed. 1495, 162 A.L.R. 1330. (Emphasis added.)

The implication seems to be evident in the Screws case that the statute did not intend to make one a criminal if *"his purpose was unrelated to the disregard of any constitutional guarantee."*

■ But the charge in the present case did not advise the jury that the Court was speaking of the willfulness with which the defendants must be found to have acted in reference to the deprivation of constitutional rights as distinguished from the intent with which they acted in arresting, jailing, beating, and otherwise maltreating their prisoner. It must be kept in mind that every beating by a state officer, no matter how willfully administered, is not a deprivation of a federal right as condemned by Sec. 52. The beating must be administered under color of law and with "the purpose to deprive" the prisoner of a "constitutional right", e. g., the substitution of trial by ordeal for a trial by law.

"The fact that a prisoner is assaulted, injured, or even murdered by state officials does not necessarily mean that he is deprived of any right protected or secured by the Constitution or laws of the United States." Screws v. United States, supra, 325 U.S. at page 108, 65 S.Ct. at page 1039, 89 L.Ed. 1495, 162 A.L.R. 1330.

Cf. Crews v. United States, 5 Cir., 160 F.2d 746, 749.[4]

■ Assuming, but not deciding, that a good charge might rescue a defective indictment in certain situations, we, nevertheless, hold that a charge which is defective in the same particular in which the indictment is defective can perform no such function. In this case the indictment was defective in failing to allege that the deprivation was "willful" and the charge to the jury was defective in the same particular in that it failed to charge that defendants must be found to have the purpose to deprive the prisoner of a constitutional right and not merely to have an evil purpose in the beatings and other maltreatments.

If we understand the rationale of the decision in the Screws case, it is that in the absence of willfulness in the deprivation of a right under the Fourteenth Amendment there can be "no ascertainable standard of guilt" and in the face of such an impelling viewpoint the defect in the indictment must be regarded as a matter of substance and the failure to allege willfulness and accurately to instruct the jury thereon must be regarded as prejudicial, even though no objection or exception to the charge was made.

This Court in recent months has upheld the convictions in Screws v. United States, 5 Cir., 140 F.2d 662, and Crews v. United States, 5 Cir., 160 F.2d 746, both of which were brought under Sec. 52, charging deprivations of constitutional rights, and we are not yet unmindful of the fact that the Supreme Court reversed us in the Screws case because of the fatal error of the trial Court in not instructing the jury on the question of the willfulness necessary to be proven in connection with the offense denounced by the Statute, and of which error the Supreme Court said: "And where the error is so fundamental as not to submit to the jury the essential ingredients of the only offense on which the conviction could rest, we think it is necessary to take note of it on our own motion." Screws v. United States, supra, 325 U.S. at page 107, 65 S.Ct. at page 1038, 89 L.Ed. 1495, 162 A.L.R. 1330. The failure so to instruct the jury in the Screws case was never raised in the Court below, in the Circuit Court of Appeals, nor in the Supreme Court, but it was so substantial and material that the Court took note of it on its own motion.

In the Screws case the Supreme Court said: "The constitutional vice in such a statute is the essential injustice to the accused of placing him on trial for an offense, the nature of which the statute does not define and hence of which it gives no warning." 325 U.S. at page 101, 65 S.Ct. at page 1035, 89 L.Ed. 1495, 162 A.L.R. 1330.

■ One, however, is not placed on trial by statute, but by an indictment, or information, and the immediate injustice done to the accused is not done by the statute but by an indictment under the statute, and, therefore, if the statute without the word "willful" is bad, so would be an indictment under that statute.

In Spurr v. United States, 174 U.S. 728, 19 S.Ct. 812, 43 L.Ed. 1150, quoted in Screws v. United States, supra, the Court said: "An evil motive to accomplish that which the statute condemns becomes a constituent element of the crime." 325 U.S. at page 101, 65 S.Ct. at page 1035, 89 L.Ed. 1495, 162 A.L.R. 1330.

The Supreme Court, in speaking of the case of United States v. Classic [313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368], also said in the Screws case: "The indictment was sufficient since it charged a *willful* failure and refusal of the defendant-election officials to count the votes cast, by their

[4] In this case we said: "If in the use of his official authority under color of law an officer vents his malice upon a prisoner and deprives him of a constitutional right, this manifestation and use of personal spleen need not necessarily negative the fact that such officer might at the same time have also acted with the conscious and willful purpose of depriving the prisoner of constitutional rights."

alteration of the ballots and by their false certification of the number of votes cast for the respective candidates." 325 U.S. at page 106, 65 S.Ct. at page 1037, 89 L.Ed. 1495, 162 A.L.R. 1330. (Emphasis added.)

It would seem that the converse would be true and that if the indictment had not alleged such willful failure, it would have been held to be defective.

The word "willful" rescued the statute from the abyss of constitutional invalidity. If the statute without the word "willful" is a vacuity, what is an indictment, based on such statute, without such word? If the statute without the word "willful" would fail to define an offense under the Constitution, could an indictment drawn under such statute charge an offense without the use of this highly significant word? If the statute without the word "willful" would create no valid offense, can an indictment without such word do more? Since the statute without the word "willful", in cases involving deprivation of rights under the Fourteenth Amendment, would fall for lack of the required constitutional specificity, would not an indictment without such word, but purportedly brought under such statute, be the exact equivalent of undertaking to enforce an unconstitutional statute? These questions seem to answer themselves. We conclude that to try a defendant on an indictment that fails to charge him with acting willfully, in which trial the charge of the Court to the jury failed to point out the distinction between bad purpose in chastising a prisoner and willful intent in depriving such prisoner of a constitutional right, is a matter of substance, the omission of which was prejudicial to the defendants, and that neither Sec. 391 of Title 28 U.S.C.A., nor Sec. 556 of Title 18 U.S.C.A., should be applied in such a case.

The judgment of the Court below is reversed and the cause is remanded.

Reversed and remanded.

SIBLEY and McCORD, Circuit Judges, (dissenting).

Where a general motion to dismiss an indictment is wrongly overruled because an essential element of the offense sought to be charged is omitted but the trial proceeds just as it would have if the indictment had contained the omitted word or words, does the "harmless error statute", Judicial Code, § 269, 28 U.S.C.A. § 391, forbid the reversal of a conviction for that erorr? A division of opinion in this court developed in Grimsley v. United States, 5 Cir., 50 F.2d 509. The minority reasoning was apparently favored by a unanimous court in Norris v. United States, 5 Cir., 152 F.2d 808, though the decision rested also on another ground. In the present case, heard by three judges, a reargument was ordered before all six judges, to settle the question for this court. We understand the court's present opinion to mean that the statute does not apply, and that the district court should now sustain the motion and discharge the defendants. So much, however, is said about the charge to the jury that it might be thought that error there is the ground of reversal, and that a retrial with a better charge is to be had. At the conclusion of the charge the judge asked: "Any requests or exceptions from the defendants?" and their counsel answered "No". Neither on the first argument nor on the reargument has it been contended that the charge was deficient. The charge on the meaning and application of Section 52 of Title 18 of United States Code Annotated covers three and a half printed pages, and everybody was fully conversant with the case of Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495, 162 A.L.R. 1330, and the interpretation there given the statute. The judge was trying to follow it, and four able counsel representing the defendants were satisfied with his effort, and still are. The only error is the overruling of the general motion to dismiss, and we recur to that.

We concede that "wilfully" is an important and substantial element of the offense created by Criminal Code, § 20, 18 U.S.C.A. § 52. We concede that the omission of that word from count three of the indictment is not a "defect or imperfection in matter of form only" which the trial judge could disregard by virtue of R.S. § 1025, 18 U.S.C.A. § 556, and that it was error to overrule the general ground of the motion to dismiss that count. Our question is whether this court, as a reviewing

court, should or should not reverse under the provisions of Judicial Code, § 269, 28 U.S.C.A. § 391, the pertinent part being: "On the hearing of any appeal * * * in any case, civil or criminal, the court shall give judgment after an examination of the entire record before the court, without regard to technical errors, defects, or exceptions which do not affect the substantial rights of the parties". We say that on examining this whole record it appears that the error above stated is a technical one which did not affect the substantial rights of the defendants. It cannot be denied that the trial went forward exactly as it would have if the word "wilfully" had been in the count. It was in fact in the next count of the indictment which charged the same set of facts as a conspiracy to violate Section 20. It is apparent that the omission of it in count three was a mere slip of the pleader. Indeed, the acts alleged as constituting the crime were violent acts of such a sort that they must have been wilful and were calculated to accomplish the deprivation of civil rights which resulted. When the judge came to charge the jury on count three he read Section 20 to the jury and explained it, and charged fully on the element of wilfullness, its importance and meaning, and no objection was made to the charge. The jury acquitted on the conspiracy count which charged a felony and convicted on count three for the substantive offense, a misdemeanor. This is a logical inconsistency, but a mercy which was in the jury's power. No ruling during the trial was influenced by the defect in the indictment.

What is a "technical" error? The word is sometimes used to mean frivolous or senseless, but it properly means "relating to some art or skill". See Webster's International Dictionary; Funk and Wagnall's Standard Dictionary. In the statute it means relating to the lawyer's art, and with reference to an indictment it means skill in criminal pleading. What are the "sub-stantial rights" of one tried for crime? Some are constitutional rights, and they are all substantial. Among them is the right to be indicted by a grand jury for a capital or other infamous crime, under the Fifth Amendment. This is probably not such a crime, being a misdemeanor, but if it be, this constitutional right consists not in having a technically perfect indictment, but in having a grand jury say that the accused shall be prosecuted. That right was enjoyed. The Fifth Amendment also prohibits a second jeopardy for the same offense, and the indictment is important to secure that right. But there can be no question but that this indictment would suffice to show both the offense and the transaction for which these appellants have been convicted. They are safe in that regard. They were entitled under the Sixth Amendment "to be informed of the nature and cause of the accusation", and the indictment is a usual though not the only means of affording the information. No one can deny that counsel and accused were fully informed that the nature of this accusation was a violation of Section 20, and the particular cause was the acts stated in the indictment. No one could say there was any surprise in this trial. The same amendment guarantees also a jury trial, confrontation, compulsory process and assistance of counsel, all of which were had. Besides the constitutional rights, the accused were of course entitled also to a fair and legal trial in all other respects, concerning which no complaint is made. Guilt was satisfactorily proved. Nothing is wrong save that one word has been left out of the indictment, and everyone who had read and heard read Section 20 knew that it belonged in it; and the case was tried in all respects as if it had been. It is highly "technical" to reverse this case that the word may be supplied and the trial be repeated in just the same way. We think the statute which governs this appellate court forbids our doing this.