**CHOW BING KEW, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 15251.**

United States Court of Appeals
Ninth Circuit.

May 20, 1957.

Rehearing Denied June 18, 1957.
Motion for Leave to File Second Petition for Rehearing Denied Oct. 21, 1957.

Writ of Certiorari Denied Dec. 9, 1957.
See 78 S.Ct. 259.

---

**468**

Forrest E. Macomber, Stockton, Cal., Kenneth G. McGilvray, Sacramento, Cal., Arthur J. Phelan, San Francisco, Cal., for appellant.

Lloyd H. Burke, U. S. Atty., San Francisco, Cal., Robert E. Woodward, Asst. U. S. Atty., Sacramento, Cal., for appellee.

Before DENMAN, Chief Judge, and BONE and FEE, Circuit Judges.

DENMAN, Chief Judge.

Chow Bing Kew, hereafter Chow, appeals from his conviction in the District Court for the Northern District of California, Northern Division, of a violation of Section 911 of 18 U.S.C. in January, 1952 and of a violation of Section 1001 in April, 1953. He was sentenced to 18 months in prison for each of the two offenses, the sentences to run concurrently, and fined $1,000 on the first and $5,000 on the second. The case was tried without a jury, and no findings were requested. F.R.Crim.P., rule 23(c), 18 U.S.C.

The indictment, consisting of two separate counts, one charging the 1952 violation of Section 911, Title 18 U.S.C. and the other 1953 violation of Section 1001, Title 18 U.S.C., reads as follows:

"The Grand Jury Charges:

"*Count One:* That Chow Bing Kew, alias Sam Wahyou, alias Donald Harold Wahyou, (hereinafter called 'said de-fendant'), heretofore, to-wit: On or about January 18, 1952, at Stockton, County of San Joaquin, State and Northern Division of the Northern District of California, and within the jurisdiction of this Court, then and there being, did knowingly, and unlawfully falsely represent himself to be a citizen of the United States without having been naturalized or admitted to citizenship, or without otherwise being a citizen of the United States (18 U.S.C.A. § 911).

"The Grand Jury Further Charges:

"*Count Two:* That on or about April 14, 1953, at Stockton, County of San Joaquin, State and Northern Division of the Northern District of California, and within the jurisdiction of this Court, [no one] did unlawfully, knowingly, and wilfully falsify, conceal, and cover up by trick, scheme, and device a material fact and made a false, fictitious and fraudulent statement or representation to Roy R. Anderson, an investigator of the Immigration and Naturalization Service of the Department of Justice, a department of the United States, by telling him he was a citizen of the United States of America, knowing such statement or representation to be false, fictitious, and fraudulent in that he was not a citizen of the United States of America. (18 U.S.C.A. § 1001.)

"A True Bill
/s/ Royse Clayton
Foreman"

■■ Since no one is named as committing the crime in the second count, the district court had no jurisdiction in personam to try Chow.[1] Undoubtedly it was intended by the phrase "(hereafter called said defendant)" in the first count that the words "said defendant" would be inserted before the words "did unlawfully" etc., of the second count. The trial court cannot supply the omission and thus create jurisdiction. Nor can the defendant in effect indict

---

1. F.R.Crim.P. rule 7(c) provides that "The indictment or information shall state for each count the official or customary citation of the statute, rule, regulation or other provision of law *which the defendant is alleged therein to have violated.*" [Emphasis supplied.]

himself by treating the second count as if he were therein named.

The judgment on this second count is reversed and it is ordered dismissed.

■ 1. *Did Chow make a Willfully False Representation of Citizenship in Violation of Section 911, Title 18 U.S.C.?*

Section 911, as far as pertinent, provides:

"Whoever falsely and willfully represents himself to be a citizen of the United States shall be fined not more than $1,000 or imprisoned not more than three years, or both."

In construing this statute it is pertinent that it was an amendment to a prior statute which had made wilfulness something that had to do with a wrongful purpose. That statute reads in pertinent part:

" * * * whoever, for any fraudulent purpose whatever, shall falsely represent himself to be a citizen of the United States * * * shall be [punished]." 35 Stat. c. 321, § 79, p. 1103.

The precise meaning of the word "willfully" depends upon the context in which it is used.[2] In view of the amendment of the above quoted statute from which Section 911 was derived, we think it clear that the government in a prosecution under Section 911 need not show that the misrepresentation was made for a fraudulent purpose, and that "willfully" as used in this section means only that it must be proved beyond a reasonable doubt that the misrepresentation was voluntarily and deliberately made.[3]

■ Appellant's contention is that the prosecution failed to maintain its burden of proof on this issue since it offered no direct evidence that he "willfully" signed a printed renewal application for a state license costing but five dollars to sell beverages at a store in Oakley owned by himself and other partners.

This application contained twelve questions, the eighth being, "Are you a citizen of the United States?", to which the answer typed in on the application form when appellant signed it is "yes".

The application appellant signed contains the following:

"I have read the foregoing application and know the contents thereof and each and all of the statements therein made are true; * * * that no person other than the applicant or applicants has any direct or indirect interest in the applicant's or applicants' business to be conducted under the license(s) for which this application is made."

The uncontradicted testimony summarized by the court is that the appellant is:

" * * * the president of several corporations operating supermarkets as well as engaged in the business of General merchant, grocery store, meat market, furniture store, drug store, department store, cattle business, rancher, and Northwestern Development Company, uranium business, farmer, and * * * has amassed a fortune of half a million dollars while so engaged * * *."

Also uncontradicted is the testimony of appellant's agent that in the course of his business, appellant signs 200 to 300 business documents a week.

One Helton, who was supervisor of the partnership's many stores, seeking a renewal of the five dollar state license to sell alcoholic beverages at the partnership's Oakley store applied therefor to the office of the State Board of Equalization at Martinez. Helton testified that a clerk in the office of the Board typed up an application form to be signed by appellant, and advised Helton that

---

2. See, e. g., Screws v. United States, 1945, 325 U.S. 91, 101, 65 S.Ct. 1031, 89 L.Ed. 1495; United States v. Illinois Central R. Co., 1938, 303 U.S. 239, 58 S.Ct. 533, 82 L.Ed. 773; United States v. Murdock, 1933, 290 U.S. 389, 54 S.Ct. 223, 78 L.Ed. 381.

3. Depratu v. United States, 9 Cir., 1948, 171 F.2d 75; United States v. Franklin, 7 Cir., 1951, 188 F.2d 182.

the form required the verified signature of a member of the partnership. Although California law requires that the names of all partners appear on the form, only appellant's name was typed thereon by the clerk who further typed "yes" on the form in answer to the printed question. "Are you a citizen of the United States?" Helton stated he then took the filled-in application to appellant's office where, without reading it, appellant signed it. Thereafter Helton took it to a notary who signed the form's verification though appellant never appeared before him. Helton thereafter mailed it to Sacramento.

The above testimony, unshaken on cross-examination, might nevertheless be disbelieved by the judge and the question would then arise whether eliminating that testimony the mere signed document itself proved willfulness. We think under the above cases that it does not.

The government contends, however, that the record contains ample evidence of appellant's other misrepresentations concerning his citizenship which is admissible to negate appellant's contention that the misrepresentation with which he is here charged resulted from mere carelessness and inadvertence.

The history of appellant's career in this country as it appears in the record reveals that appellant's false statement as to his citizenship in the application for the license was neither the first nor the last occasion on which appellant misrepresented not only his citizenship but his identity.

In 1929 appellant, born in China, was legally admitted to this country for permanent residence. Shortly after his arrival he met a Chinese United States citizen named Charlie Wah You. Appellant was understandably anxious to become a citizen and although it was explained to him that this was impossible, Charlie Wah You offered to consult an attorney to see what could be done. An attorney was retained, and on the basis of the perjured testimony of Charlie Wah You an order issued from the California Superior Court establishing appellant's birth in California as the son of Charlie Wah You. It appears that appellant subsequently consulted another attorney concerning the legality of this arrangement. Both the attorneys involved and Charlie Wah You have since died.

Thereafter appellant continued to identify himself under his "adopted" name as Donald or Sam Wah You or Wahyou. Under this name in 1947 he obtained, as a native citizen, a United States passport to visit Hong Kong. Both before and after the violation of Section 911 with which he is here charged, appellant in applications for life insurance represented himself as having been born in Sacramento, California.

■ Since the fact that appellant signed the license application is not disputed, and the only question here concerns his willfulness in so doing, it is clear that this evidence of the other transactions in which he made similar misrepresentations was properly admissible to negate his contention that he did so inadvertently. 2 Wigmore, Evidence § 302, (3rd ed. 1940); McCormick, Evidence § 164(1954).

Appellant contends that there is no finding as to his willfulness and that the court confined itself to a criticism of his veracity in the following language:

"On the contrary, his brash carelessness, if such be the case, emphasizes his criminality."

In this he ignores the finding in the judgment and commitment that,

" * * * the defendant at Stockton, California, did *knowingly and unlawfully falsely represent himself to be a citizen of the United States* without having been naturalized or admitted to citizenship, or otherwise being a citizen of the United States." [Emphasis supplied.]

■ We conclude that this evidence clearly supports the trial court's conclusion that appellant willfully misrepresented his citizenship in signing the ap-

plication, and appellant's conviction on Count One is therefore affirmed.

Denial of Leave to File Second Petition for Rehearing.

Chow Bing Kew, hereafter Chow, now seeks leave to file a second petition for rehearing on the contention that the first count of the indictment fails to charge a crime in violation of 18 U.S.C.A. § 911 and hence, he contends, the court lacks jurisdiction to consider it.[1] That count states:

> "Count One: That Chow Bing Kew, alias Sam Wahyou, alias Donald Harold Wahyou, (hereinafter called "said defendant"), heretofore, to-wit: On or about January 18, 1952, at Stockton, County of San Joaquin, State and Northern Division of the Northern District of California, and within the jurisdiction of this Court, then and there being, did knowingly, and unlawfully falsely represent himself to be a citizen of the United States without having been naturalized or admitted to citizenship, or without otherwise being a citizen of the United States (18 U.S.C.A. § 911)."

■ Chow's contention is that this count of the indictment fails to use the word "wilfully" and hence fails to state the crime under 18 U.S.C.A. § 911 which provides that:

> "Whoever falsely and willfully represents himself to be a citizen of the United States shall be fined not more than $1,000 or imprisoned not more than three years, or both."

Concerning the word "wilful" in a criminal statute the Supreme Court states in Screws v. United States, 325 U.S. 91, at page 101, 65 S.Ct. 1031, 1035, 89 L.Ed. 1495:

> "We recently pointed out that 'willful' is a word 'of many meanings, its construction often being influenced by its context.' Spies v. United States, 317 U.S. 492, 497, 63

S.Ct. 364, 367, 87 L.Ed. 418. At times, as the Court held in United States v. Murdock, 290 U.S. 389, 394, 54 S.Ct. 223, 225, 78 L.Ed. 381, the word denotes an act which is intentional rather than accidental. And see United States v. Illinois Central R. Co., 303 U.S. 239, 58 S.Ct. 533, 82 L.Ed. 773. But 'when used in a *criminal statute, it generally means an act done with a bad purpose.*' Id., 290 U.S. at page 394, 54 S.Ct. at page 225. And see Felton v. United States, 96 U.S. 699, 24 L.Ed. 875; Potter v. United States, 155 U.S. 438, 15 S.Ct. 144, 39 L.Ed. 214; Spurr v. United States, 174 U.S. 728, 19 S.Ct. 812, 43 L.Ed. 1150; Hargrove v. United States, 5 Cir., 67 F.2d 820, 90 A.L.R. 1276. In that event something more is required than the doing of the act proscribed by the statute. Cf. United States v. Balint, 258 U.S. 250, 42 S.Ct. 301, 66 L.Ed. 604. An evil motive to accomplish that which the statute condemns becomes a constituent element of the crime. Spurr v. United States, supra, 174 U.S. at page 734, 19 S.Ct. at page 815; United States v. Murdock, supra, 290 U.S. at page 395, 54 S.Ct. at page 225." [Emphasis added.]

■ The word "wilful" in the statute need not be repeated in the indictment, at least if the question is not raised in the court below or on appeal, if the "necessary facts" showing the "bad purpose" of the accused's conduct "appear in any form, or by fair construction can be found within the terms of the indictment." Hagner v. United States, 1932, 285 U.S. 427, 429, 433, 52 S.Ct. 417, 420, 76 L.Ed. 861. See also, Kramer v. United States, 9 Cir., 166 F.2d 515.

■ We think that by "fair construction" of the words of the indictment—that the accused "did knowingly and unlawfully falsely represent himself"—they clearly mean that he acted "wilfully" in

---

1. This is although the contention was not contained in his statement of points to be considered on appeal, nor in his briefs, nor in the hearing, nor in its petition for rehearing.

making his false statement that he is a citizen of the United States.

This question has been considered by us repeatedly. In Nickell v. United States, 9 Cir., 161 F. 702, 706, certiorari denied 214 U.S. 517, 29 S.Ct. 699, 53 L.Ed. 1064,[2] it was contended that the indictment failed to charge that the following acts were done wilfully as required by the statute:

"When, in truth and in fact, as each of the said persons would then well know, and as they, the said Henry W. Miller, Frank E. Kincart, Martin G. Hoge, and Charles Nickell, would then well know, such persons would be applying to purchase such lands on speculation, and not in good faith to appropriate such lands to their own exclusive use and benefit, respectively, and would have made agreements and contracts with other persons by which the titles which they should acquire from the said United States in such lands would inure to the benefit of persons except themselves."

This court held:

"If the defendants knew that these affidavits would be false, and knew that the entrymen would have made contracts for the conveyance of the lands to be acquired by them, and having this knowledge nevertheless procured the making of them, there can be but one conclusion, and that is that they willfully, which is but another name for intentionally, entered into the conspiracy charged. While matters of substance are as essential now as before the passage of the statute, and of necessity must always remain so, we take it that its enactment was intended to have substantially the same effect as those of many of the states, which provide that an indictment which will enable a person of common understanding to know what is intended is sufficient.

"In Van Gesner v. United States, 9 Cir., 153 F. [46] 54, 82 C.C.A. 188, it was observed by this court:

"'When the facts alleged necessarily import such willfulness, the failure to use the word itself is not fatal. Such failure, under such circumstances, would not be fatal even at common law.'"

Chow contends that the Fifth Circuit has held otherwise in Pullen v. United States, 164 F.2d 756. A charge was brought under a statute (then 18 U.S.C. § 52[*]) making it an offense for any person, under color of law, wilfully to subject any person to the deprivation of any constitutional rights. The indictment charged only that the defendants, law officers, "did subject" a person to the deprivation of the right to be secure in his person. There was no allegation as in the instant case, relating to the intent or mental state of the defendants or from which it could be determined that the defendants' acts were knowing, unlawful, deliberate, or other than inadvertent.

Chow also cites as a general rule the following from Marteney v. United States, 10 Cir., 218 F.2d 258, 261:

"When 'wilfullness' is made an essential element of an offense, as it is in this case, it is a general rule that a failure to allege wilfullness is fatal to the indictment."

In so doing he conspicuously omits the next cited opinion on which the court relies, namely, Hagner v. United States, 285 U.S. 427, 52 S.Ct. 417, considered supra, stating that allegations which are the equivalent of "willfulness" are sufficient.

■ Chow further contends that the indictment is fatally defective in failing to state the person to whom the false claim to citizenship was made, citing two district court cases decided before 18

---

2. So also in Holsman v. United States, 9 Cir., 248 F. 193, 195; Cf. Johnston v. United States, 9 Cir., 145 F.2d 137, 138.

* 1948 Revision, 18 U.S.C.A. § 242.

U.S.C.A. § 911 was amended to the present form. It then read:

"Whoever, for any fraudulent purpose whatever, shall falsely represent himself to be a citizen of the United States without having been duly admitted to citizenship, shall be fined not more than $1,000, or imprisoned not more than two years, or both."

The two cases, United States v. Weber, D.C., 71 F.Supp. 88, 91 and United States v. Raymond, D.C., 37 F.Supp. 957 are based on the theory that because a statement defrauding some one is involved the person defrauded by believing the statement should be named. Since the element of fraud is not in the amended statute controlling here, there is no merit to the contention.

The motion for leave to file a second petition for rehearing is denied.