*772 Justice Kennedy,
dissenting.
The Court is correct, in my view, to conclude that 35 U. S. C. § 271(b) must be read in tandem with § 271(c), and therefore that to induce infringement a defendant must know “the induced acts constitute patent infringement.” Ante, at 766.
Yet the Court does more. Having interpreted the statute to require a showing of knowledge, the Court holds that willful blindness will suffice. This is a mistaken step. Willful blindness is not knowledge; and judges should not broaden a legislative proscription by analogy. See United States v. Jewell, 532 F. 2d 697, 706 (CA9 1976) (Kennedy, J., dissenting) (“When a statute specifically requires knowledge as an element of a crime, however, the substitution of some other state of mind cannot be justified even if the court deems that both are equally blameworthy”). In my respectful submission, the Court is incorrect in the definition it now adopts; but even on its own terms the Court should remand to the Court of Appeals to consider in the first instance whether there is sufficient evidence of knowledge to support the jury’s finding of inducement.
The Court invokes willful blindness to bring those who lack knowledge within § 271(b)’s prohibition. Husak & Cal-lender, Wilful Ignorance, Knowledge, and the “Equal Culpability” Thesis: A Study of the Deeper Significance of the Principle of Legality, 1994 Wis. L. Rev. 29, 35; see also L. Alexander & K. Ferzan, Crime and Culpability: A Theory of Criminal Law 34-35 (2009) (cautioning against the temptation to “distort” cases of willful blindness “into cases of knowledge”); G. Williams, Criminal Law: The General Part § 57, p. 157 (2d ed. 1961). The Court’s definition of willful blindness reveals this basic purpose. One can believe that there is a “high probability” that acts might infringe a patent but nonetheless conclude they do not infringe. Ante, at 769; see also ibid, (describing a willfully blind defendant as one “who can almost be said to have actually known the critical *773 facts”). The alleged inducer who believes a device is noninfringing cannot be said to know otherwise.
The Court justifies its substitution of willful blindness for the statutory knowledge requirement in two ways, neither of which is convincing.
First, the Court appeals to moral theory by citing the “traditional rationale” that willfully blind defendants “are just as culpable as those who have actual knowledge.” Ante, at 766. But the moral question is a difficult one. Is it true that the lawyer who knowingly suborns perjury is no more culpable than the lawyer who avoids learning that his client, a criminal defendant, lies when he testifies that he was not the shooter? See Heilman, Willfully Blind for Good Reason, 3 Crim. L. & Philosophy 301, 305-308 (2009); Luban, Contrived Ignorance, 87 Geo. L. J. 957 (1999). The answer is not obvious. Perhaps the culpability of willful blindness depends on a person’s reasons for remaining blind. E. g., ibid. Or perhaps only the person’s justification for his conduct is relevant. E. g., Alexander & Ferzan, supra, at 23-68. This is a question of morality and of policy best left to the political branches. Even if one were to accept the substitution of equally blameworthy mental states in criminal cases in light of the retributive purposes of the criminal law, those purposes have no force in the domain of patent law that controls in this case. The Constitution confirms that the purpose of the patent law is a utilitarian one, to “promote the Progress of Science and useful Arts,” Art. I, §8, cl. 8.
Second, the Court appeals to precedent, noting that a “similar concept” to willful blindness appears in this Court’s cases as early as 1899. Ante, at 767. But this Court has never before held that willful blindness can substitute for a statutory requirement of knowledge. Spurr v. United States, 174 U. S. 728, 735 (1899), explained that “evil design may be presumed if the [bank] officer purposefully keeps himself in ignorance of whether the drawer has money in the bank or not, or is grossly indifferent to his duty in respect *774 to the ascertainment of that fact.” The question in Spurr was whether the defendant’s admitted violation was willful, and with this sentence the Court simply explained, that wrongful intent may be inferred from the circumstances. It did not suggest that blindness can substitute for knowledge. Neither did Turner v. United States, 396 U. S. 398 (1970), or Leary v. United States, 395 U. S. 6 (1969). As the Court here explains, both cases held only that certain statutory presumptions of knowledge were consistent with due process. Ante, at 767. And although most courts of appeals have embraced willful blindness, counting courts in a circuit split is not this Court’s usual method for deciding important questions of law.
The Court appears to endorse the willful blindness doctrine here for all federal criminal cases involving knowledge. It does so in a civil case where it has received no briefing or argument from the criminal defense bar, which might have provided important counsel on this difficult issue.
There is no need to invoke willful blindness for the first time in this case. Facts that support willful blindness are often probative of actual knowledge. Circumstantial facts like these tend to be the only available evidence in any event, for the jury lacks direct access to the defendant’s mind. The jury must often infer knowledge from conduct, and attempts to eliminate evidence of knowledge may justify such inference, as where an accused inducer avoids further confirming what he already believes with good reason to be true. The majority’s decision to expand the statute’s scope appears to depend on the unstated premise that knowledge requires certainty, but the law often permits probabilistic judgments to count as knowledge. Cf. Connecticut Mut. Life Ins. Co. v. Lathrop, 111 U. S. 612, 620 (1884) (Harlan, J.) (“[BJeing founded on actual observation, and being consistent with common experience and the ordinary manifestations of the condition of the mind, it is knowledge, so far as the human intellect can acquire knowledge, upon such subjects”).
*775 The instant dispute provides a ease in point. Pentalpha copied an innovative fryer. The model it copied bore no U. S. patent markings, but that could not have been a surprise, for Pentalpha knew that a fryer purchased in Hong Kong was unlikely to bear such markings. And Pentalpha failed to tell the lawyer who ran a patent search that it copied the SEB fryer. These facts may suggest knowledge that Pentalpha’s fryers were infringing, and perhaps a jury could so find.
But examining the sufficiency of the evidence presented in the 5-day trial requires careful review of an extensive record. The trial transcript alone spans over 1,000 pages. If willful blindness is as close to knowledge and as far from the “ 'knew or should have known’ ” jury instruction provided in this case as the Court suggests, ante, at 759, then reviewing the record becomes all the more difficult. I would leave that task to the Court of Appeals in the first instance on remand.
For these reasons, and with respect, I dissent.