COUNTY CANVASSING BOARD OF PRIMARY ELECTIONS OF HILLSBOROUGH COUNTY, and BOARD OF COUNTY COMMISSIONERS OF HILLSBOROUGH COUNTY, *Appellants*, v. J. W. LESTER, SR., *Appellee*.

En Banc.

Opinion filed October 16, 1928.

486

*T. M. Shackleford, Jr., Dickenson & Lake,* and *Jackson, Dupree & Cone,* all of Tampa, for Appellants;

*Sandler & Duff, John W. Gaines,* and *L. D. McGregor,* all of Tampa, for Appellee.

STRUM, J.—In the Democratic primary election held on June 5, 1928, J. W. Lester, Sr., the complainant below, and Vincent Nuccio, Jr., were candidates for nomination to the office of County Commissioner for District No. 1 of Hillsborough county. Upon the face of the returns, Nuccio won the nomination by a plurality of seventy-eight votes, Lester receiving the next highest number of votes.

On September 18, 1928, Lester brought his bill of complaint against the county canvassing board and the Board of County Commissioners of Hillsborough county, alleging that the canvassing board is about to certify to the Board of County Commissioners the name of Nuccio as the Democratic nominee for said office and that the Board of County Commissioners is about to print Nuccio's name as such candidate upon the official ballot for the general election to be held on November 6, 1928. Lester seeks to restrain each of said boards from taking the action just stated.

The original bill alleged that Nuccio "did not file the sworn statement showing the names of his political workers and the consideration, if any, for which they worked, within the time required by law, and had not so filed the same until the 21st day of August, 1928, * * * The said Vincent Nuccio, Jr., as your orator is advised and believes, and accordingly avers, did file a statement (on

August 21, 1928) purporting to show that he had no political workers in said primary election, but your orator says that such statement is untrue and false, because your orator specifically says that the said Vincent Nuccio, Jr., did have political workers within the meaning of said statute who did political work within the meaning of said statute for said Vincent Nuccio, Jr., as a candidate in said primary election; and that the said Nuccio knew that he had said political workers in said election and that his failure to file said sworn statement showing these political workers, and the consideration for which they worked, was therefore a refusal so to do and/or a willful failure to obey the provisions of the statute requiring such sworn statement, and that his act in filing the statement he did file nearly three months after said election was a refusal and/or willful failure to obey said statute and was false, fraudulent and corrupt practice on his part, and that said purported statement, showing that he had no such political workers, was only filed after he became aware that your orator was actively engaged in taking steps to prevent his, the said Nuccio's, name from appearing upon the general election ballot as a Democratic nominee for said office at the next ensuing general election to be held on November 6, 1928.''

The bill further alleges categorically that the name of Nuccio should not be placed upon the ballot for the general election, regardless of the certification of his name by the canvassing board ''because he is not the lawful nominee of the Democratic Party for said office, and not entitled to have his name placed upon said official ballot because he refused or willfully failed to obey the statutes governing said primary election in which he was a candidate * * * by not filing his sworn statement showing political workers, as aforesaid, within the time re-

quired by law, and further, by filing beyond the time required by law, a purported statement which is false and untrue in fact.'' The bill contains no further allegations of fact relating to the circumstances of the failure to file the affidavit, but by amendment additional allegations concerning the truth of the affidavit filed by Nuccio on August 21, 1928, were added to the bill. The amendment purports to set out the names of alleged campaign workers, the character of the services performed by them, and the amounts alleged to have been paid them by Nuccio.

A general demurrer to said bill of complaint was overruled and a temporary injunction granted, restraining ''the defendants'' from placing the name of Nuccio upon the ballots to be used in the general election. From this order defendants appeal.

By Sec. 364, Rev. Gen. Stats. 1920, each candidate for nomination in a primary election is required to file three statements of campaign expenses, two of which are required to be filed prior to the primary and the third ''within ten days after the primary.''

Sec. 366 provides, in effect, that at the time the third expense statement required by Sec. 364 is filed, another statement under oath shall be filed by the candidate, giving the names of his political workers and telling for what consideration, if any, such work was done, the term ''political workers'' to refer to those who left for a time or part of a time their ordinary avocations to further the candidacy of the candidate.

Sec. 367 provides, ''any candidate 'refusing or willfully failing' to obey any of the provisions of Sec. 366 shall not be allowed to have his name printed on the official ballot at the next ensuing general election * * *'' Sec. 5905 provides the same penalty, with an added penalty of fine and imprisonment. In both sections, however,

the conduct denounced is ''refusing or willfully failing'' to file the statement of campaign workers. Sec. 5915 provides in substance that whoever shall ''wilfully and corruptly'' make any false oath, affidavit or sworn statement provided for by the statutes relating to elections shall suffer the pains and penalties of perjury. Sec. 5916 also provides that any candidate who shall ''willfully'' violate any provision of the primary election law shall in addition to other penalties forfeit any nomination he may have received at the primary election in reference to which such offense was committed. In the latter two instances the violation must be, respectively, ''willful and corrupt'' and ''willful.''

The word ''willful,'' like many other words in our language, is elastic and is of somewhat varied significa- tion according to the context in which it is found and the nature of the subject matter to which it refers. Sometimes ''willfully'' is used synonomously with ''voluntarily.'' In construing statutes of a penal or quasi-penal nature, however, a clear distinction is recognized between a mere ''failure'' and a ''willful failure.'' As used in such statutes, a ''willful failure'' to obey is almost universally held to mean something more than a mere inattentive, inert or passive omission. ''Willful,'' when used in such statutes, denotes some element of design, intention, or deliberation, a failure resulting from an exercise of the will, or a purpose to fail. A ''willful failure'' denotes a conscious purpose to disobey, a culpable omission, and not merely innocent neglect. A failure without any element of intention, design or purpose, and resulting merely from innocent neglect, is not a ''willful'' failure. Every voluntary act of a person is intentional, and therefore in a sense willful, but generally speaking, and usually when considering statutes of the

character mentioned, a voluntary act becomes "willful" in law only when it involves some degree of conscious wrong on the part of the actor, or at least culpable carelessness on his part, something more than a mere omission to perform a previously imposed duty. Shuman v. State, 62 Fla. 84, 56 So. R. 694; State v. Meek, 172 N. W. R. 1023; Ann. Cas. 1912C, 1075; Felton v. U. S., 96 U. S. 702, 24 L. Ed. 875; Roberts v. U. S., 126 Fed. 897, 904; State v. Edmunds, 104 N. W. R. 1115; Brown v. State, 119 N. W. R. 338; Potter v. U. S., 155 U. S. 437; 39 L. Ed. 214; Spurr v. U. S. 174 U. S. 728; 43 L. Ed. 1150.

Likewise, a "refusal" implies something more than a mere passive failure. Used in this connection, a "refusal" is closely analogous to, if not synomomous with, a "willful failure," for a refusal usually implies a previous demand or request, or the existence of circumstances equivalent thereto. It means more than mere inert default by neglect. State ex rel. Winsor v. Taylor, 114 S. W. R. 1029; Peo. v. Perkins, 26 Pac. R. 245; Duffy v. Edson, 84 N. W. R. 264, 268; Burns v. Fox, 14 N. E. R. 541, 542; Brought v. Cherokee Nation, 69 S. W. R. 937, 940; Mutual Life Ins. Co. v. Hill, 178 U. S. 347, 44 L. Ed. 1097; California & C. Co. v. Great Western Lbr. Co., 185 Pac. R. 1009.

The distinction between a mere "failure" to act and a "refusal or willful failure" to act or obey seems to have been clearly recognized by the Legislature in passing the Primary Laws. In Sec. 5933, a statute closely related to those under consideration and which prescribes the consequences of a non-observance of Sec. 364 providing for the filing of sworn expense statements, the Legislature used merely the term "fail." In enacting Sec. 367, and other sections pertaining to a failure to file the statement of campaign workers, the Legislature qualified the term

"failure" by providing that it should be a "willful failure" or a "refusal" to obey the statute. Since the courts have so often construed the meaning of these terms, it is reasonable to presume that the Legislature was conscious of the distinction between the terms, and that it used them advisedly.

The allegations of the bill with reference to Nuccio's failure to file the statement of campaign workers shows no more than a mere passive, inert or inattentive omission to file the statement within the time prescribed by the statute. No facts are alleged which would constitute a conscious or purposeful failure or a design to evade the statute. No demand has been made upon him; it is not shown that he was actually aware of the necessity for filing the statement or that it had been called to his attention, nor that there were any other circumstances from which it could be found that Nuccio consciously, purposely or designedly evaded the filing of·the statement, or "refused" to file it, as the term is understood by the courts. Of course, Nuccio is chargeable with knowledge of the existence of the statute requiring the filing of such statement. It is unnecessary, however, for us to decide whether, on account of such constructive knowledge, a delay by Nuccio in filing the statement for such an unreasonable length of time under all the circumstances as to amount to an utter disregard of the law would constitute a "refusal or willful failure." It is clear to us that the mere passive and inert omission from June 16th to August 21st to file the statement, unattended by any other circumstances tending to indicate "willfullness" or a "refusal" as those terms are understood in this connection, does not constitute such an unreasonable delay and such an utter disregard of the law as to amount to a "refusal" or "willful failure" to act, particularly since approximately two months still inter-

vened before the time for printing the ballots for the general election.

Taking up now the attack upon the veracity of the statement of campaign workers filed on August 21st, it must be borne in mind that the burden is upon the complainant to establish the falsity thereof by clear and unequivocal allegation and proof. While care should be taken not to weaken the wholesome effect of statutes designed to prevent corrupt practices in connection with elections, it is of equal importance that the will of the electorate upon political questions, when that will has been lawfully expressed at the polls, should not be subverted by inconclusive or equivocal evidence of post primary omissions on the part of the nominee when the statute penalizes only a ''refusal or willful failure'' and the nominee's conduct is not clearly shown to be inconsistent with an honest and sincere belief, conformable to reason and good faith, that he had complied with the law. Even if, under Sec. 5916, or other applicable statutes, the falsity of the statement of campaign workers would constitute a sufficient ground for withholding Nuccio's name from the general election ballot, a point it is unnecessary to now decide, the affidavits submitted by complainant in support of his allegations of falsity are insufficient to clearly and convincingly establish the charge.

We have carefully examined the affidavits relied on to support the charge of falsity. In the first place, they are replete with hearsay. Those portions thereof not subject to that objection tend to disclose that certain persons left their usual avocations and worked in furtherance of Nuccio's candidacy, but not one of them establishes the fact that those persons did so by Nuccio's procurement, either direct or indirect, or that when he filed his statement of campaign workers he knew, directly or indirectly, of their work in his behalf, or that the circumstances were such as to clearly impute such knowledge. Some of the affidavits

aver that Nuccio paid certain of these persons for their labor in his behalf, but they do not show that such payments were either made or promised by Nuccio prior to the filing of his statement, or that such payments were purposely deferred until after that time in order to evade the law, or that any other form of subterfuge was indulged in to that end. The affidavits simply make the categorical statement that Nuccio paid stated workers for their services. When the payment was made with reference to the filing of the statement is not shown, nor are any other circumstances shown which tend to disclose an evasion of the statute in that respect. It is not enough to show that Nuccio's statement of campaign workers was contrary to the facts. It must be shown that Nuccio knew the statement was false, or that the circumstances were such as to impute knowledge, or were clearly inconsistent with a lack of knowledge. This is true because in order that the candidate's nomination shall be forfeited under Sec. 5916, his violation of the law must be "willful," and if the filing of a statement untrue, in fact, be regarded as a failure to obey Sec. 366 requiring the filing of such statement, that failure must also be "willful" or must amount to a "refusal." In any event, the candidate's action in filing a statement to the effect that he had no campaign workers could not be "wilfully" false nor could it be a "refusal" to file a true statement unless he had knowledge of the falsity of the statement at the time he filed it, or the proven circumstances are such as to clearly impute knowledge, or are clearly inconsistent with a lack of knowledge, and this the evidence fails to clearly show in this instance. See Potter v. U. S., 155 U. S. 437; 39 L. Ed. 214; Spurr v. U. S., 174 U. S. 728; 43 L. Ed. 1150.

The order of October 5, 1928, overruling the demurrer to the bill and granting a temporary injunction is reversed

with directions to sustain the demurrer and dissolve the injunction.

WHITFIELD, TERRELL, BROWN AND BUFORD, J. J., concur.