# Third District Court of Appeal

## State of Florida

Opinion filed August 16, 2023.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D22-725
Lower Tribunal No. 18-29259
_____


**HNTB Corporation,**
Appellant,

vs.

**Caitlin Milstead, etc.,**
Appellee.


An Appeal from a non-final order from the Circuit Court for Miami-Dade County, Jose M. Rodriguez, Judge.

Johnson Daboll Anderson, PLLC, and Scott W. Anderson and David S. Johnson (Tampa); and Shook, Hardy & Bacon LLP, and Matthew Bernstein, for appellant.

Zarzaur Law, P.A., and Joseph A. Zarzaur, Jr. (Pensacola); and Newsome Melton, P.A., and Maegen Peek Luka (Orlando), for appellee.


Before FERNANDEZ, HENDON and GORDO, JJ.

HENDON, J.

HNTB Corporation ("HNTB") appeals from a non-final order denying its motion for summary judgment which argued entitlement to government agency immunity pursuant to sections 768.29(9)(a) and (10)(e), Florida Statutes. We reverse.

Facts

Zachary Stinson ("Stinson") was a construction worker on a highway project on Interstate 10 ("I-10") in north Florida. It is speculated that he fell off the back of a truck's tailgate while riding back to his crew location, struck his head on the road, and died from head trauma. Caitlin Milstead ("Milstead"), Stinson's daughter and personal representative of his estate, sued HNTB, among others, for negligence.

Appellant HNTB was hired by the Florida Department of Transportation ("FDOT") as the Construction Engineering Inspector ("CEI"), for a project involving installation of smart electronic signage poles along the I-10 corridor in north Florida. HNTB's role was to oversee the general contractor's compliance with the project. The general contractor, SICE, was also hired by FDOT and subcontracted the heavy pole lifting and installation work to Ellis Crane Works ("Ellis Crane"), for whom Stinson worked. Part of SICE's work involved placing traffic cones and traffic signage along the highway for road shoulder and lane closures to alert

2

approaching traffic of the upcoming work site. SICE contracted with Bob's Barricades for the "maintenance of traffic" ("MOT") equipment and placement, which is highly regulated by FDOT. SICE is, by contract with Ellis Crane, the party solely responsible for MOT equipment placement and pickup.

HNTB's job was to observe and report to FDOT about SICE's compliance with the contract and the standards and specifications for the job, including the execution of MOT functions. HNTB engaged field inspectors to observe MOT functions and the actual construction, and who were required to create daily reports for FDOT.

The record indicates that Ellis Crane personnel, including Stinson, helped SICE with placing and picking up traffic cones and signs along roads approaching the project. It was apparently common practice for either SICE or Ellis Crane personnel to perform these tasks while sitting on the tailgate or bed of a pickup truck moving slowly up and down the interstate road shoulder.

On May 1, 2018, with the last pole installation done, the record indicates that Stinson was helping SICE superintendents pick up cones and traffic signs along the interstate starting at the furthest point from the project, or about a quarter mile from the rest of the crew. Because the sign

3

bases are very heavy, SICE superintendent Hicks got out of the truck to help Stinson lift the sign into the back of the truck. Once all of the MOT equipment had been picked up, Hicks testified that he offered Stinson a ride back in the crew cab to the crew site. What happened thereafter is not clear from the record testimony, but Stinson apparently indicated that he would walk to the crew site, and the parties speculate that either Stinson was sitting on the truck tailgate or was attempting to sit on the tailgate when the driver of the vehicle, another SICE superintendent, drove away toward the crew site. Stinson apparently fell off the bed or tailgate when the truck accelerated, hit his head on the pavement, and later died of head trauma. Both SICE superintendents present at the time testified that they were unaware that Stinson was in the truck bed or on the tailgate when they pulled away.

There is some testimony that HNTB engineering inspectors would instruct contractors to immediately fix MOT setups that were not in compliance with FDOT engineering specifications and standards, and limited testimony that HNTB inspectors probably observed workmen riding in the backs of trucks. There is no record of HNTB making any recommendation to SICE regarding the danger of its employees riding in pickup truck beds while performing their tasks.

Milstead, as personal representative of Stinson's estate, filed a complaint in negligence against HNTB, among others. Milstead asserts that HNTB willfully and wantonly breached its contractual duty to provide safe project conditions by overlooking job site MOT violations, and by failing to direct SICE to prohibit Ellis Crane workers from helping with MOT equipment placement and pickup. HNTB moved for summary judgment pursuant to section 768.28(10)(e), Florida Statutes.[1] HNTB argued that as

---

[1] 768.28(10)(e) provides,

> For purposes of this section, a professional firm that provides monitoring and inspection services of the work required for state roadway, bridge, or other transportation facility construction projects, or any of the firm's employees performing such services, shall be considered agents of the Department of Transportation while acting within the scope of the firm's contract with the Department of Transportation to ensure that the project is constructed in conformity with the project's plans, specifications, and contract provisions. Any contract between the professional firm and the state, to the extent permitted by law, shall provide for the indemnification of the department for any liability, including reasonable attorney's fees, incurred up to the limits set out in this chapter to the extent caused by the negligence of the firm or its employees. This paragraph shall not be construed as designating persons who provide monitoring and inspection services as employees or agents of the state for purposes of chapter 440. This paragraph is not applicable to the professional firm or its employees if involved in an accident while operating a motor vehicle. This paragraph is not applicable to a firm engaged by the Department of Transportation for the design or construction of a state roadway, bridge, or other transportation facility construction project or to its employees, agents, or subcontractors.

5

an agent of FDOT, and pursuant to sections 768.28(9)(a)[2] and (10)(e), Florida Statutes, HNTB is entitled to sovereign immunity as an agent of the State.[3] Milstead argued in rebuttal that the "wanton and willful" exception to sovereign immunity applied because HNTB's knowledge of the repeated

---

[2] 768.28(9)(a) provides,

> An officer, employee, or agent of the state or of any of its subdivisions may not be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. However, such officer, employee, or agent shall be considered an adverse witness in a tort action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function. The exclusive remedy for injury or damage suffered as a result of an act, event, or omission of an officer, employee, or agent of the state or any of its subdivisions or constitutional officers is by action against the governmental entity, or the head of such entity in her or his official capacity, or the constitutional officer of which the officer, employee, or agent is an employee, unless such act or omission was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. The state or its subdivisions are not liable in tort for the acts or omissions of an officer, employee, or agent committed while acting outside the course and scope of her or his employment or committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

[3] McFeely v. Prudential Healthcare Plan, Inc., 843 So. 2d 1023, 1024 (Fla. 1st DCA 2003) ("In Florida law, agency status is a question of fact, except in those cases where the party opposing summary judgment is unable to point to any conflicting facts or inferences to be drawn from the facts.").

and obvious danger of allowing workers to ride unsecured in truck beds without prohibiting that conduct was wanton and willful. Milstead provided a comprehensive list of facts that it argued showed HNTB's reckless disregard for safety and proper procedure.

At the December 17, 2021 hearing on HNTB's motion for summary judgment, Milstead's counsel asked the trial court to defer ruling and requested more time to conduct further discovery, including a second deposition of HNTB senior engineer supervisor Matt Burrell. The trial court gave Milstead an additional sixty days. After deposing Burrell a second time, Milstead submitted a supplemental memo in opposition to HNTB's motion for summary judgment, in which Milstead contended there were multiple MOT violations that were not reflected in HNTB's lead inspector's daily work reports, which the evidence suggests were not updated to reflect daily work situations, amounting to disregard of safety on site. HNTB contended that Milstead's supplemental memo and the record demonstrated that the MOT work was complete at the time of the incident, and that HNTB did not intentionally cause the accident or act with willful

disregard for Stinson's safety, and that the additional discovery showing deficiencies in MOT operations were irrelevant to the incident in question. [4]

The trial court concluded that there were genuine issues of material fact regarding whether HNTB acted in a manner exhibiting wanton and willful disregard of Stinson's safety. Further, the trial court stated that there was a factual question whether HNTB was "acting within the scope of its

---

[4] In opposition to HNTB's motion for summary judgment, Milstead relied upon an OSHA report. The OSHA report provides that, "[o]n May 1, 2018, an unrestrained employee fell from the bed or tailgate of a pickup truck and suffered a fatal head injury from striking the pavement." The OSHA report indicated that the SICE job site superintendents commonly permitted Ellis Crane employees to ride in the bed or on the tailgate of the pickup trucks while retrieving traffic cones, in contravention of the contract specifying that SICE is solely responsible for MOT placement and takedown.

HNTB opposed introduction of the OSHA report in its supplemental authority in support of summary judgment. HNTB contended that HNTB was not a party to the OSHA investigation and had no input to the report. Further, HNTB argued that the OSHA report is based on statements from individuals who are not HNTB employees, and the OSHA investigator's findings and opinions, all of which are inadmissible hearsay, citing Florida Rule of Evidence 803(3). That rule excludes "'a record setting forth factual findings resulting from an investigation made pursuant to authority granted by law.' Records that rely on information supplied by outside sources or that contain evaluations or statements of opinion by a public official are inadmissible under this provision. In Florida, rather than offering this type of record, a witness must be called who has personal knowledge of the facts.'" Lee v. Dep't of Health & Rahab. Servs., 698 So. 2d 1194, 1201 (Fla. 1997) (citations omitted).

'employment and function.'" The trial court denied HNTB's motion for summary judgment, and HNTB has appealed.

Whether a party is entitled to immunity pursuant to sections 768.28(9)(a) and (10) is a pure question of law subject to de novo review. Lovelace v. G4S Secure Sols. (USA), Inc., 320 So. 3d 178, 185 (Fla. 4th DCA 2021). The standard of review governing a trial court's ruling on a motion for summary judgment posing a pure question of law is also de novo. See Major League Baseball v. Morsani, 790 So. 2d 1071, 1074 (Fla. 2001); Fayad v. Clarendon Nat'l Ins. Co., 899 So. 2d 1082, 1085 (Fla. 2005). In order to determine the propriety of a summary judgment, our Court must resolve whether there is any genuine issue of material fact and whether the moving party is entitled to a judgment as a matter of law. Fla. R. Civ. P. 1.510(a).[5]

Analysis

HNTB's conduct, either by overlooking day-to-day MOT placement deficiencies, or by failing to monitor and alert SICE to on-site safety considerations, does not rise to the level of "willful and wanton" as it applies

---

[5] The trial court applied the recently amended Florida summary judgment rule, requiring summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In re Amends. to Fla. Rule of Civ. Proc. 1.510, 309 So. 3d 192, 192 (Fla. 2020).

9

to the facts relevant to the incident that resulted in Stinson's death. Both parties agree that HNTB is a state agency, contracted to oversee the engineering aspects of installation of optical cable and smart signs along the I-10 corridor. As a state agency, pursuant to section 768.28(9)(a), HNTB is immune from suit <u>unless</u> it committed the acts outside the course and scope of employment, <u>or</u> unless the actor was acting in bad faith <u>or</u> with a malicious purpose <u>or</u> in a manner exhibiting wanton and willful disregard of human rights, safety, or property. <u>Richardson v. City of Pompano Beach</u>, 511 So. 2d 1121, 1123 (Fla. 4th DCA 1987); <u>Naso v. Hall</u>, 338 So. 3d 283, 287 (Fla. 4th DCA 2022) (concluding that section 768.28(9) did not apply to the corporation, but rather to the individual employee).

The phrase "wanton and willful disregard of human rights [or] safety," as used in section 768.28(9)(a), has been interpreted as "conduct much more reprehensible and unacceptable than mere intentional conduct," and "conduct that is worse than gross negligence." <u>Peterson v. Pollack</u>, 290 So. 3d 102, 109 (Fla. 4th DCA 2020) (citations omitted). Although several Florida courts have sometimes permitted the question of bad faith, malice, or willful and wanton conduct to be sent to the jury, the acts challenged involved far more than mere negligence. <u>See, e.g.</u>, <u>McGhee v. Volusia</u>

Cty., 679 So. 2d 729, 730 (Fla. 1996) (concluding that a deputy who lunged at a handcuffed suspect, grabbed him by the throat, and kicked him, acted within the scope of his employment and stating, "the question must be put to the fact-finder whether [the deputy] acted in bad faith, with malicious purpose, or in a manner exhibiting wanton or willful disregard of human rights, safety, or property"); Carestio v. Sch. Bd. of Broward Cty., 866 So. 2d 754, 756 (Fla. 4th DCA 2004) (holding that school employees who kicked and punched a student while escorting him from class were within the scope of employment and directing the factfinder to determine whether they acted in wanton or willful manner); City of Boynton Beach v. Weiss, 120 So. 3d 606, 611 (Fla. 4th DCA 2013) (citing City of Miami v. Simpson, 172 So. 2d 435 (Fla. 1965)) (rejecting the city's immunity claim where the jury found that an officer who pushed a detainee into a metal chair and tased him multiple times did not act in bad faith, with malicious purpose, or in wanton or willful manner).   Further,

> [t]he word "willful," like many other words in our language, is elastic, and is of somewhat varied signification according to the context in which it is found and the nature of the subject-matter to which it refers. Sometimes "willfully" is used synonymously with "voluntarily." In construing statutes of a penal or quasi penal nature, however, a clear distinction is recognized between a mere "failure" and a "willful failure." As used in such statutes, a "willful failure" to obey is almost universally held to mean something more than a mere inattentive, inert, or passive omission. "Willful," when used in such statutes, denotes some

11

element of design, intention, or deliberation, a failure resulting from an exercise of the will, or a purpose to fail. A "willful failure" denotes a conscious purpose to disobey, <u>a culpable omission, and not merely innocent neglect. A failure without any element of intention, design, or purpose, and resulting merely from innocent neglect, is not a "willful" failure</u>. Every voluntary act of a person is intentional, and therefore in a sense willful, but, generally speaking, and usually when considering statutes of the character mentioned, a voluntary act becomes "willful" in law only when it involves some degree of conscious wrong on the part of the actor, or at least culpable carelessness on his part, <u>something more than a mere omission to perform a previously imposed duty</u>.

<u>County Canvassing Bd. of Primary Elections of Hillsborough Cty. v. Lester</u>, 118 So. 201, 202–03 (Fla. 1928) (emphasis added).

Milstead's assertion that HNTB was routinely, and in a willful and wanton manner, allowing SICE and Ellis Crane personnel to violate industry standards and Florida law, failing to adequately supervise SICE's MOT functions, and failing to report violations of FDOT engineering standards, is not supported by the record. HNTB's alleged acts or omissions may be characterized as negligence, but they do not rise to the level of "willful and wanton," and are remote from the circumstances that led to Stinson's tragic accident.

Accordingly, we reverse and remand for entry of summary judgment in HNTB's favor based on its statutory entitlement to government agency immunity pursuant to sections 768.29(9)(a) and (10)(e), Florida Statutes.

12

Reversed and remanded.