DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ALBERTO M. RUIZ DE GAMBOA,**
Appellant/Cross-Appellee,

v.

**NEWTH GARDENS CONDOMINIUM ASSOCIATION, INC.**,
Appellee/Cross-Appellant.

No. 4D2024-0217

[June 4, 2025]

Appeal and cross-appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Richard L. Oftedal, Senior Judge; L.T. Case No. 50-2019-CA-009347-XXXX-MB.

Donna Greenspan Solomon of Solomon Appeals, Mediation & Arbitration, Fort Lauderdale, for appellant/cross-appellee.

Seth A. Kolton of Shendell & Pollock, P.L., Boca Raton, for appellee/cross-appellant.

FORST, J.

This case involves an appeal filed by Alberto M. Ruiz De Gamboa ("Unit Owner") and a cross-appeal filed by Unit Owner's condominium association, Newth Gardens Condominium Association, Inc ("the association"). Both appeals relate to Unit Owner's condominium records requests and the association's alleged willful noncompliance with section 718.111, Florida Statutes (2018), in responding to those requests.

Regarding the June 2018 records requests—which are the subject of the association's cross-appeal—we affirm the trial court's final judgment without discussion. As to the April 2018 records request—which is the subject of Unit Owner's appeal—we determine that the association violated section 718.111 and, accordingly, reverse that portion of the trial court's final judgment.

**Background**

In April 2018, Unit Owner requested his condominium association make certain records available for inspection. The association, through

its president, claimed it timely mailed Unit Owner a letter setting an appointment for him to view the requested records. Unit Owner contended he had never received such a letter. One month following the initial record inspection request, Unit Owner sent the association a pre-arbitration notice via certified mail, placing the association on notice that it was twenty-four working days past its deadline to comply with Unit Owner's request, and that "no record has been made available for inspection" in violation of section 718.111(12)(b), Florida Statutes (2018). Unit Owner never received a response to this notice. Soon thereafter, Unit Owner filed a petition for mandatory non-binding arbitration against the association, alleging it had failed to furnish him access to inspect and photocopy the requested records. The arbitrator sided with Unit Owner, which led to the association filing a complaint for trial de novo.

At trial, the association president testified that he had drafted a letter acknowledging Unit Owner's records inspection request and set a specific date and time the following week for the inspection. He admitted that he had not personally mailed the letter, but he "probably gave [the association's response] to one of [his] staff members to mail." While the president testified that the association was "sending [responses] by mail, at that time" he explained the association "didn't have any particular set of procedures to correspond with a homeowner. Some were by email, some were by mail." When asked if mail was typically picked up by the post office, the president stated, "we do two things. We get a pick-up at the office and then anything that's done after the pick-up, we take to the post office." He continued that the pick-up time varied, but said he had drafted Unit Owner's letter "towards the end of the day," so "[i]t was probably dropped off at the post office." The president did not present any evidence that the staffer had followed his instructions and properly addressed the envelope and mailed it to Unit Owner. Unit Owner testified that he did not receive any response to his records request before his filing an arbitration petition, notwithstanding his notice to the association after the time for a response had passed.

Following a bench trial, the trial court made several findings with respect to the April 2018 records request. The trial court determined that Unit Owner and the association president were both credible witnesses, that the former had made a proper request for records, and "there [was] a presumption that the letter was . . . placed in the U.S. Mail, as an authorized method of delivery." The trial court further found Unit Owner's "testimony that he never received the letter [was] also credible." The court concluded the association's response was "lost in the mail and undelivered through no fault of the [a]ssociation [and the association] should not be penalized or sanctioned as result." Thus, the trial court concluded: "So based upon my finding the letter was placed in the mail and wasn't received, I don't think I can . . . find any willfulness on the part of the

association to deny access to the records or not supply the records, pursuant to the request." With this, the trial court did not apply a presumption of the association's willful failure to comply with section 718.111.

Unit Owner moved for rehearing and the trial court subsequently denied that motion. Unit Owner's appeal timely followed.

## Analysis

We apply a mixed standard of review. The trial court's findings of fact are reviewed for competent and substantial evidence, and its legal conclusions are reviewed de novo. *See Buyer's Choice Auto Sales, LLC v. Palm Beach Motors, LLC*, 391 So. 3d 463, 467 (Fla. 4th DCA 2024).

Unit Owner contends the trial court erred in failing to apply a rebuttable presumption of willful noncompliance pursuant to section 718.111(12)(b) and (c), Florida Statutes (2018). He further claims that the association failed to rebut the presumption because the association did not present competent and substantial evidence that the letter had been mailed. In response, the association insists the trial court correctly applied section 718.111 and appropriately found the association had sufficiently responded to Unit Owner's April 2018 records request and made the records available for copying and inspection.

At the time of Unit Owner's records request, section 718.111(12)(b) stated, "[t]he records of the association shall be made available to a unit owner . . . within 5 working days after receipt of a written request by the board or its designee." Section 718.111(12)(c)1. further stated:

> The official records of the association are open to inspection by any association member or the authorized representative of such member at all reasonable times. The right to inspect the records includes the right to make or obtain copies, at the reasonable expense, if any, of the member or authorized representative of such member. . . . *The failure of an association to provide the records within 10 working days after receipt of a written request creates a rebuttable presumption that the association willfully failed to comply with this paragraph.* A unit owner who is denied access to official records is entitled to the actual damages or minimum damages for the association's willful failure to comply . . .

§ 718.111(12)(c)1., Fla. Stat. (2018) (emphasis added).

Here, per the trial court's credibility determination, the association president drafted a response that he had intended to be timely mailed to Unit Owner. However, the association did not present any evidence that the response had actually been mailed or otherwise conveyed to Unit Owner.

"Evidence that a document was drafted is insufficient, standing alone, to establish that it was in fact mailed. Rather, the 'mailing must be proven by producing additional evidence such as proof of regular business practices, an affidavit swearing that the letter was mailed, or a return receipt.'" *Alessio v. Ocwen Loan Servicing, LLC*, 273 So. 3d 3, 5 (Fla. 4th DCA 2019) (citations omitted). "If the evidence comes by way of witness testimony, 'the witness must have personal knowledge of the company's general practice in mailing letters.'" *Id.* at 6 (citations omitted); *see also Edmonds v. U.S. Bank Nat'l Ass'n*, 215 So. 3d 628, 630 (Fla. 2d DCA 2017) ("Although the letters were admitted into evidence, the fact that they were drafted is insufficient by itself to show that they were mailed.").

The association president's speculative ("probably") testimony in the instant case did not satisfy the criteria set forth in *Alessio*. Thus, the trial court's finding that the association's scheduling letter had been mailed to Unit Owner is not supported by competent substantial evidence.

Accordingly, the trial court erred in finding a presumption that the association had mailed the scheduling letter. Instead, as the Unit Owner credibly testified to nonreceipt of a scheduling letter, the trial court should have begun its analysis with a presumption of the association's willful failure to comply with section 718.111(12)(c). This would have shifted the burden of proof to the association to rebut the presumption with competent substantial evidence that the association had timely provided Unit Owner with an opportunity to inspect the records.

The association relies on *Ridge Groves Condominium Ass'n v. Misserville*, 198 So. 3d 704 (Fla. 2d DCA 2016) to argue that, in making the copies available in its office for inspection, it had furnished Unit Owner a reasonable opportunity to inspect the records and thus, this was a sufficient act to satisfy the plain meaning of "provide" within section 718.111. However, we find *Ridge Groves* inapposite to the case at hand. There, the unit owner had sent a signed records request form to his condominium association stating that he would call for an appointment in five days. 198 So. 3d at 705. The condominium association made copies of the records available for inspection in anticipation of the unit owner's call, but the unit owner failed to call. *Id.* The trial court held that the condominium association did not willfully fail to comply with section 718.111 because the association had made the records available, and the

unit owner had failed to call for the appointment. *Id.* at 706 ("The undisputed evidence reflected that upon receiving [the unit owner's] request, the Association copied the records and set them aside in the Association office in anticipation of his call.").

Unlike in *Ridge Groves*, Unit Owner in the instant case did not inform the association that he would follow his written record inspection request with a phone call (or email or text message). Nor did the association "anticipat[e]" such a follow-up, as the president had drafted, and intended to send, a letter setting the inspection date and time. Thus, the association failed to produce sufficient evidence that it had provided Unit Owner's requested records within section 718.111's required timeframe.

## Conclusion

Here, we have a situation in which a unit owner requested to inspect association records and did not receive a response. As the association failed to support its claim with competent substantial evidence that a response had actually been mailed or otherwise conveyed to Unit Owner, the presumption of "willful failure" to comply with the records inspection statute was not rebutted.

Moreover, before commencing legal action, Unit Owner had informed the association that he had not received a response to his request. This provided the association with an opportunity for a "do-over" and a mitigation of damages and legal fees and costs. Instead, the association did not respond to this notification, leading to Unit Owner's arbitration petition. The association's non-response to Unit Owner's notification that he had not received a reply to his record inspection request dooms any argument that the non-mailing of the association's response was inadvertent and not "willful." Rather, the association's failure to respond to Unit Owner's non-receipt notification here converts unintended miscommunication to "willful failure." *See HNTB Corp. v. Milstead*, 369 So. 3d 749, 755 (Fla. 3d DCA 2023) ("[A] voluntary act becomes 'willful' in law only when it involves some degree of conscious wrong on the part of the actor, or at least culpable carelessness on his part, something more than a mere omission to perform a previously imposed duty." (emphasis omitted) (quoting *Cnty. Canvassing Bd. of Primary Elections of Hillsborough Cnty. v. Lester*, 118 So. 201, 202–03 (1928))).

The association's failure to provide the requested records for inspection within ten working days after receipt of Unit Owner's April 2018 written request created a rebuttable presumption that the association willfully failed to comply with section 718.111. As discussed above, the association failed to rebut this presumption. Accordingly, we reverse the trial court's

final judgment for the association regarding the April 2018 records inspection request.  We affirm the final judgment with respect to the June 2018 records inspection request.

*Affirmed in part, reversed in part.*

WARNER and CONNER, JJ., concur.

*       *       *

***Not final until disposition of timely filed motion for rehearing.***